## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **STEPHEN SAMPLES,**<br>on behalf of himself and<br>all others similarly situated,<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**ACCRETIVE HEALTH, INC., d/b/a**<br>**MEDICAL FINANCIAL SOLUTIONS;**<br>**GREG KAZARIANARIAN,** individually;<br>**MARY TOLAN,** individually;<br><br>      **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. _____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORIGINAL CLASS ACTION COMPLAINT

### NATURE OF ACTION

1.    This is class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

### JURISDICTION AND VENUE

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where acts and transactions giving rise to Plaintiff's action occurred in this State and this District, where

1

Plaintiff resides in this State and this District, and where Defendants transact business in this State and this District.

## PARTIES

4.     Plaintiff Stephen Samples ("Plaintiff") is a natural person who at all relevant times resided in the State of Tennessee, County of Rutherford.

5.     Defendant Accretive Health, Inc., ("Accretive"), is a for-profit publicly-traded Delaware corporation with principal executive offices situated at 401 N. Michigan Ave, Suite 2700, Chicago, IL 60611.  Defendant may be served through it registered agent:  CT Corporation System, 800 S Gay St., Ste. 202, Knoxville, TN 37929.

6.     Accretive is a corporation who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

7.     Medical Financial Solutions is a name under which Accretive collects and/or attempts to collect consumer debts.

8.     The name Medical Financial Solutions is not registered to Accretive in the State of Tennessee.

9.     Individual defendant Greg Kazarian ("Kazarian"), has served as Accretive's senior vice president since January 2004, and until November 2009 was also Accretive's general counsel and secretary.  Kazarian is, upon information and belief, residing in Chicago, Illinois.

10.     Kazarian is an individual who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

11.     Individual defendant Mary Tolan ("Tolan") serves as chief executive officer to Accretive.  Tolan is, upon information and belief, residing in Chicago, Illinois.

2

12.     Tolan is an individual who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

## I.     ACCRETIVE AND ITS BUSINESS

13.     Accretive is a debt collector as that term is defined by 15 U.S.C. § 1692(a)(6). (*See Crump v. Medical Financial Solutions*, Case No. 1:10-cv-00656-RJJ (W.D. Mich. 2010) (Doc. #3 at ¶¶ 8-9); *Colbert v. Medical Financial* Solutions, Case 1:10-cv-00762-PLM (W.D. Mich. 2010) (Doc. #3 at ¶¶ 8-9).

14.     Accretive was founded in November 2003 by Tolan to provide what are known as revenue cycle management services to healthcare providers located across the United States. As represented by chief financial officer John Staton, in 2009, Accretive reported over $500M in revenue.

15.     The recurring series of events that healthcare providers must complete to generate revenues for the healthcare services they provide is known as the "revenue cycle". Debt collection is a significant part of the revenue cycles.

16.     The revenue cycle operations of a typical healthcare provider often fail to capture and collect the total amounts contractually owed to it from patients for medical services rendered.

17.     Accretive enters into contracts with healthcare providing customers and attempts to boost its customers'[1] revenue by using its management, technology solutions and purportedly unique revenue cycle methodologies to collect allegedly delinquent medical-services debts from patients. Accretive splits the increased revenues with its clients.

18.     Accretive developed and continues to design creative approaches intended to

---

[1] Accretive's clients include, among others:  Borgess Medical Center in Kalamazoo, Michigan; Genesys Regional Medical Center in Flint, Michigan; St. Mary's in Saginaw, Michigan; and St. Joseph's in Tawas City, Michigan.

3

increase net revenue yields on patient-owed obligations. These processes include direct communications and consumer behavior modeling and conduct trending analyses for collections.

19. Accretive developed proprietary software for use in its collections operations and measurement activity. To manage patient follow-up activities and the collection of patient debt, Accretive uses a combination of off-the-shelf telephony and campaign management software which analyzes critical data points to determine the optimum approach for collecting outstanding debts.

20. Accretive represents one of its revenue cycle tools as "Medical Financial Solutions": "Accretive's Medical Financial Solutions tool uses proprietary algorithms to assess a patient's propensity to pay and determines follow-up actions structured to allow higher yields with lower collections effort." (Accretive Form 10Q Q1 2010).

21. Another of the methods employed by Accretive to turn medical bills into profit is the listing its clients' accounts on the Internet auction website for consumer debts ARxChange.com, where they are subject to sale to the highest bidder. (*See Hospitals Put Patients' Debt Up for Auction, Collection Agencies Bid Online For Right to Recoup Funds; Worries About Tougher Tactics*, The Wall Street Journal; June 3, 2008, Rubenstein, Sarah).

## II. INDIVIDUAL DEFENDANTS TOLAN AND KAZARIAN ARE PERSONALLY AND MATERIALLY INVOLVED IN THE AFFAIRS AND DAY-TO-DAY DEBT-COLLECTION OPERATIONS OF ACCRETIVE.

22. The Sixth Circuit and most district courts that have addressed the issue have held that the corporate structure does not insulate shareholders, officers, or directors from personal liability under the FDCPA. *Kistner v. Law Offices of Michael P. Margelefsky, L.L.C.*, 518 F.3d 433, 437-38 (6th Cir. 2008); *del Campo v. Kennedy*, 491 F.Supp.2d 891, 903 (N.D. Cal. 2006); *Brumbelow v. Law Offices of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 618-21 (D. Utah 2005); *Albanese v. Portnoff Law Assocs., Ltd.*, 301 F. Supp. 2d 389, 400 (E.D. Pa. 2004); *Musso*

4

*v. Seiders*, 194 F.R.D. 43, 46-47 (D. Conn. 1999); *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 861-62 (D. Ariz. 1999); ; *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1337-38 (D. Utah 1997); *Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1372 (E.D. Cal. 1995); *Teng v. Metro. Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D. N.Y. 1994).

23.     "Courts have held that officers and employees of the debt collecting agency may be jointly and severally liable with the agency." *Carroll v. United Compucred Collections, Inc.*, No. 1-99-0152, 2002 WL 31936511 at *5 (M.D. Tenn. Nov. 15, 2002) (*citing Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1230, 1336-37 (D. Utah 1997); *Teng v. Metropolitan Retail Recovery, Inc.*, 851 F.Supp. 61, 67 (E.D. N.Y. 1994); *West v. Costen*, 558 F. Supp. 564, 587 (W. D. Va. 1983).

24.     Here there is no issue of piercing the corporate veil or disregarding the corporate entity before Kazarian and Tolan can be held personally liable for the violations of the FDCPA alleged in this complaint. *Carroll v. United Compucred Collections, Inc.*, 2002 WL 31936511 at *5 (M.D. Tenn. Nov. 15, 2002); *Kistner* , 518 F.3d at 437 (6th Cir. 2008) ("In other words, contrary to [the defendant's] argument that he cannot be personally liable because he did not participate in sending the specific letter to Kistner, he may be personally liable on the basis of his participation in the debt collection activities of the LLC more generally.").

25.     An individual, regardless of rank or status, is personally liable under the FDCPA if the individual: (1) materially participated in collecting the debt at issue, *del Campo v. Kennedy*, 491 F. Supp. 2d 891, 903 (N.D. Cal. 2006); *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 862 (D. Ariz. 1999); (2) "exercise[d] control over the affairs of [the] business," *Piper v. Portnoff Law Assocs.*, 274 F. Supp. 2d 681, 689-90 (E.D. Pa.. 2003); (3) was personally involved in the collection of the debt at issue," *Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999); or (4) "was regularly engaged, directly and indirectly, in the collection of debts." *Kistner v. Law Offices of Michael P. Margelefsky, L.L.C.*, 518 F.3d 433, 438 (6th Cir. 2008) (quoting *Ditty*, 973

5

F.Supp. at 1337 (D. Utah 1997)). *See also See Musso v. Seiders,* 194 F.R.D. 43, 46-47 (D. Conn.1999) ("A high ranking employee, executive or director of a collection agency may fit within the statutory definition of a debt collector."); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1336-37 (D.Utah 1997) (finding that a collection firm's attorney was personally liable under the FDCPA after meeting the definition of a debt collector); *Teng v. Metropolitan Retail Recovery, Inc.,* 851 F.Supp. 61, 67 (E.D.N.Y.1994) (same); *West v. Costen,* 558 F.Supp. 564, 587 (W.D. Va. 1983) (same).

A.     **Tolan Exercised Control Over the Affairs of Accretive and Regularly Engaged, Directly and Indirectly, in the Collection of Debts.**

26.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 25.

27.     Tolan is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

28.     Tolan directly and/or indirectly participated in the collection activities of Accretive and/or its clients.

29.     Tolan directly or indirectly materially participated in collecting or attempting to collect debts owed or due, or asserted to be owed or due another, by occupying positions of critical importance to Accretive and/or its clients.

30.     As corporate officer, director, and key manager, Tolan exercised control over the affairs of a debt collection business through Accretive, and was at all times relevant engaged, directly or indirectly, in the collection of debts through involvement in, and through exercising significant management and control over, Accretive's business affairs.

31.     Accretive's senior operational leaders monitor each customer's revenue cycle performance through ten to twelve operating reviews each year.

32.     Each Accretive healthcare-providing client is managed by an on-site team of

6

revenue cycle experts led by a site leader, typically at a director level. CEO Mary Tolan has overall responsibility for all hospitals accounts. Vice presidents, including Kazarian, share responsibility for establishing cost baselines, managing costs and implementing other initiatives.. In turn, the vice-presidents report directly to Tolan whose management style is hands-on.

33.     Tolan is responsible for evaluating and rating each Accretive team's hospital-specific performance and use of the Accretive operating model and measurement process to measure improved revenue performance. In assessing hospital-specific performance, Tolan personally conducts site reviews, and uses metrics such as Accretive's Best Possible methodology to measure the improvement in net revenue that Accretive uses to invoice its clients, and Accretive's 360 Degree Feedback report to evaluate individual employee performance.

34.     Tolan conducts monthly operating review observations and hold multiple-hour sessions with individuals every month at which Tolan and Kazarian focus on teaching, learning, assessing, detailed emersion and facts and understanding of what needs to improve so that accelerated improvement can take place from month to month.

35.     Tolan travels routinely to the offices and hospitals of Accretive's clients where she conducts on-site operational meetings. Tolan also holds annual and mid-year reviews, and monthly operating meetings. Tolan recommends areas for improvement to all other vice presidents, senior vice presidents, and site directors at site operating reviews she conducts. She issues critiques, makes recommendations, and issues directives for adjusting and/or modifying the Accretive Operating Model as applied to individual Accretive client accounts.

36.     Tolan monitors and manages, both directly and indirectly, Accretive's collection and attempted collection of allegedly delinquent healthcare debts. On a monthly basis, Tolan reviews cash collection figures and yield-base follow-up in terms of write-offs, and in terms of

bad debt for each of Accretive's client accounts.

37.     Tolan personally implements initiatives and new technologies to improve revenue and reduce costs in connection with Accretive's handling of its client's revenue cycles. Tolan is responsible for how Accretive's business model is implemented and integrated with Accretive's client's accounts, and by whom.

38.     Accretive's new business opportunities have historically been generated through high-level industry contacts of members of its senior management team and board of directors and positive references from existing customers.

39.     Tolan played a key role in maintaining and expanding Accretive's debt collection activities throughout the class period.

40.     Employees who are considered essential to Accretive's long-term success are eligible to receive equity incentive awards, which typically vest over four years. In determining the size of equity incentive awards to executive officers, our compensation committee generally considers the executive's experience, skills, level and scope of responsibilities and internal comparisons to other comparable positions in our company. Accordingly, on February 3, 2010, Accretive's board of directors, on the recommendation of the compensation committee, granted stock options to purchase 1,176,000 shares of Accretive's common stock to Tolan.

41.     As an officer or director of Accretive, Tolan materially authorized and/or directed and/or participated in the violations of the FDCPA set forth below. She is personally liable notwithstanding the extent, if any, to which she acted as an agent of Accretive and not on her own behalf.

8

**B.** **Kazarian Exercised Control Over the Affairs of Accretive and Regularly Engaged, Directly and Indirectly, in the Collection of Debts.**

42.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 40.

43.    Kazarian is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

44.    Kazarian directly and/or indirectly participated in each the collection activities of Accretive.

45.    Kazarian exercised significant control over the debt collection activities and affairs of Accretive and//or its clients.

46.    Kazarian directly or indirectly materially participated in collecting or attempting to collect debts owed or due, or asserted to be owed or due another, by occupying positions of critical importance to Accretive and/or its clients.

47.    As corporate officer and key manager Kazarian exercised control over the affairs of a debt collection business through Accretive., and was at all times relevant engaged, directly or indirectly, in the collection of debts through his significant involvement in Accretive's business affairs.

48.    Tolan consults with Kazarian and other executive vice-presidents concerning daily operations and management of Accretive's accounts. Kazarian works with Tolan directly to steer individual Accretive team implementation of the Accretive model in order to increase performance and drive profits.

49.    Tolan and Kazarian often communicate directly Accretive's client's chief executive officers to address operational and performance concerns.

50.    Upon information and belief, on a monthly basis, Kazarian reviews cash collection figures and yield-base follow-up in terms of write-offs, and in terms of bad debt for

each of Accretive's client accounts.

51.    Kazarian has significant compliance responsibilities and has operating responsibilities at several of Accretive's client sites.

52.    Kazarian monitors and manages, both directly and indirectly, Accretive's collection and attempted collection of allegedly delinquent healthcare debts.

53.    Accretive's new business opportunities have historically been generated through high-level industry contacts of members of its senior management team and board of directors and positive references from existing customers.

54.    Kazarian played a key role in maintaining and expanding Accretive's debt collection activities throughout the class period.

55.    Employees who are considered essential to Accretive's long-term success are eligible to receive equity incentive awards, which typically vest over four years. In determining the size of equity incentive awards to executive officers, our compensation committee generally considers the executive's experience, skills, level and scope of responsibilities and internal comparisons to other comparable positions in our company. Accordingly, on February 3, 2010, Accretive's board of directors, on the recommendation of the compensation committee, granted stock options to purchase 282,240 shares of Accretive's common stock to Kazarian.

56.    As an officer or director of Accretive, Kazarian materially authorized and/or directed and/or participated in the violations of the FDCPA set forth below. He is personally liable notwithstanding the extent, if any, to which he acted as an agent of Accretive and not on his own behalf.

57.    Defendants Accretive Health, Inc., Greg Kazarianarian, and Mary Tolan will be collectively called "Defendants" hereafter.

## III. DEFENDANTS' ATTEMPTED TO COLLECT AN ALLEGED CONSUMER DEBT FROM PLAINTIFF.

58.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 57.

59.     Plaintiff is a natural person obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due a creditor other than Defendants.

60.     Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendants, arises from a transaction or transactions in which the money, property, insurance, and/or services that are the subject of the transaction(s) were incurred primarily for personal, family, or household purposes.

61.     Defendants use instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

62.     On or about September 9, 2010, at or near 8:48 A.M., Defendants initiated, or caused to be initiated, a telephone call to Plaintiff's telephone line, in effort to collect from Plaintiff an obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendant, and left a standardized prerecorded voice message/voice recording stating:

> This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you. This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you.

**Exhibit 1** (CD of voice recording).

63.     On or about September 16, 2010, at or near 8:43 A.M, Defendants initiated, or caused to be initiated, a telephone call to Plaintiff's telephone line, in effort to collect from Plaintiff an obligation, or alleged obligation, owed or due, or asserted to be owed or due a

creditor other than Defendant, and left a standardized prerecorded voice message/voice recording[2] stating:

> This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you. This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you.

**Exhibit 2** (redundancy in original CD of voice recording).

64.    On or about September 17, 2010, at or near 10:16 A.M., Defendants initiated, or caused to be initiated, a telephone call to Plaintiff's telephone line, in effort to collect from Plaintiff an obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendant, and left a standardized prerecorded voice message/voice recording stating:

> This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you. This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you.

**Exhibit 3** (redundancy in original CD of voice recording).

## CLASS ACTION ALLEGATIONS

65.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 64.

66.    Plaintiff brings this action on behalf of himself and all others similarly situated. Specifically, Plaintiff seeks to represent a class of individuals defined as:

> All persons located in the Tennessee who, within one year before the date of this complaint, received a voice message/voice recording from Defendant in connection with an attempt to collect any consumer debt, where the voice message/voice recording was substantially similar or materially identical to the messages delivered to Plaintiff.

---

[2] A true and correct copy of recordings of the voice-messages left by, or caused to be left by, Defendants for Plaintiff are attached to his Complaint as Exhibits "1", "2", "3", "4", and "5". These recording are also embedded within this portable document format for ease of reference.

67.     The proposed class specifically excludes the United States of America, the states of the Sixth Circuit, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Sixth Circuit and the United States Supreme Court, all officers and agents of Defendant and all persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

68.     Defendants, as a matter of pattern and practice, leaves voice messages/voice recordings with and/or for alleged debtors using language substantially similar or materially identical to that utilized by Defendant in leaving a voice message/voice recording with and/or for Plaintiff.

69.     Defendants, as a matter of pattern and practice, employ standardized prerecorded messages in connection with their attempts to collect allegedly delinquent consumer healthcare debts.

70.     Defendants, as a matter of pattern and practice, employ a standardized script from which voice messages/voice recordings are read.

71.     The class is averred to be so numerous that joinder of members is impracticable.

72.     The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery.

73.     The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Defendants.

74.     There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented.  These common questions of law and fact predominate over questions that may affect individual class members.  Such issues include, but are not limited to: (a) The existence of Defendants' identical conduct particular to the matters at

13

issue; (b) Defendants' violations of 15 U.S.C. §1692 *et. seq*.; (c) The availability of statutory penalties; and (d) Attorney's fees and costs.

75.     The claims of Plaintiff are typical of those of the class she seeks to represent.

76.     The claims of Plaintiff and of the class originate from the same conduct, practice, and procedure, on the part of Defendants. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

77.     Plaintiff possesses the same interests and has suffered the same injuries as each class member. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

78.     Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class.

79.     Plaintiff is willing and prepared to serve this Court and proposed class.

80.     The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent class members.

81.     Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members.

82.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

83.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the

class, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

84. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendants have acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

85. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

86. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced over the controversies alleged in this Complaint and individual members are unlikely to have interest in prosecuting and controlling separate individual actions; (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692d(6)

87. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 86.

88. 15 U.S.C. § 1692d(6) provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the

general application of the foregoing, the following conduct is a violation of this section:

\*      \*      \*

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).

89.     Title 15 U.S.C. § 1692d(6) prohibits the placement of telephone calls without meaningful disclosure of the caller's identity.   "Meaningful disclosure" requires that the caller state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call.   *Hosseinzadeh*[3] *v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005); *accord Glover v. Client Services, Inc.*, No. 1:07-cv-81, 2007 WL 2902209 (W.D. Mich. Oct. 2, 2007) ("It certainly seems appropriate to find an FDCPA violation where a debt collector leaves a message on a recording device regarding a debt without meaningfully disclosing its identity, as such communication results from a telephone called placed by the debt collector.").

90.     A debt collector fails to meet the standards prescribed by 15 U.S.C. § 1692d(6) where it fails "to disclose that the caller was a debt collector and that the purpose of the call was to collect a debt." *Koby v. ARS Nat. Services, Inc.*, 2010 WL 1438763 *5 (S.D. Cal. 2010).

91.     "15 U.S.C. 1692d(6) applies 'equally to automated message calls and live calls.'" *Hosseinzadeh*, 387 F. Supp. 2d at 1115 (C.D. Cal. 2005), citing *Joseph v. J.J. Mac Intyre Cos.*, 238 F. Supp. 2d 1158 (N.D. Cal. 2002).

---

[3] In *Hosseinzadeh*, the plaintiff received several pre-recorded messages on her home phone.   The company representative stated: "This message is for Ashraf. Asharf my name is Clarence Davis. I have some very important information to discuss with you in reference to a file that has been forwarded to my office that involves you personally. Contact my office right away at 877-647-5945, extension 3618."   Applying the "meaningful disclosure" standard, the court found that the messages left for the plaintiff did not satisfy the requirements of § 1692d(6). The court held that "defendant violated § 1692d(6) when its employees failed to disclose defendant's identity and the nature of defendant's business in the messages left on plaintiff's answering machine." 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005).

92.     The voice messages/voice recordings left by, or caused to be left by, Defendants for Plaintiff in the present case are notably similar to those left in *Hosseinzadeh*.  In both instances, the voice messages/voice recordings fail to disclose that the call was placed on behalf of a collection agency.  *Hosseinzadeh*, 387 F. Supp. 2d at 1108.  Similarly, the voice messages/voice recordings fail to divulge the true nature and purpose of the call — that is, to collect a debt allegedly owed by Plaintiff.  *Hosseinzadeh*, 387 F. Supp. 2d at 1108.

93.     As such, applying *Hosseinzadeh* to the facts here, Defendants necessarily violated § 1692d(6) when it left, or caused to be left, for Plaintiff voice messages/voice recordings which fail to disclose Thompson & Booth, P.C.'s identity as a debt collector and the nature of the call. *See accord Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D. N.Y. 2006) (holding collector's identification of itself by name in pre-recorded message did not satisfy FDCPA's requirement that it disclose the communication is from a debt collector).

94.     None of Defendants' voice messages/voice recordings described herein state the nature of Defendants' business as debt collection or the purpose of the communication as an attempt to collect a debt.

95.     Defendants violated 15 U.S.C. § 1692d(6) by failing to provide meaningful disclosure of Accretive's and/or Medical Financial Solutions' identity when placing telephone calls to Plaintiff.

WHEREFORE, Plaintiff pray for relief and judgment, as follows:

a.  Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.  Adjudging that Defendants violated 15 U.S.C. § 1692d(6).

c. Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member.

d. Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

e. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

f. Awarding such other and further relief as the Court may deem just and proper.

## COUNT II: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(11)

96.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 96.

97.     15 U.S.C. § 1692e(11) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*       \*       \*

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).

98.     "Under § 1692e(11), a debt collector must disclose in the initial written communication, and in the initial oral communication if the initial communication is oral, that he is attempting to collect a debt and that any information obtained will be used for that purpose.

99.     "[T]he FDCPA requires that a debt collector identify himself as a debt collector in *all* subsequent communications." *See e.g. Savage v. Hatcher*, 109 Fed. Appx. 759, 761 (6th Cir. 2004); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1081-82 (E.D. Cal. 2008) (finding that the defendant creditor was required to include the disclosure that the communication was from a debt collector in all eleven subsequent communications between the defendant creditor and the plaintiff debtor); *Schnitzspahn v. F.A.B., Inc.*, 21 F.Supp.2d 781, 784 (W.D. Tenn. 1997) ("Section 1692e(11) requires that a debt collector clearly disclose in all communications made to collect a debt that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.").

100.     The voice messages/voice recordings delivered to Plaintiff are "communications" regardless of whether a debt is mentioned in the message. *Glover v. Client Services, Inc.*, No. 1:07-CV-81, 2007 WL 2902209 at *6 (W.D. Mich. Oct. 2, 2007); *Berg v. Merchants Assoc. Collection Div., Inc.*, 586 F. Supp. 2d 1336 (S.D. Fla. 2008), citing *Belin v. Litton Loan Servicing, LP*, 2006 WL 1992410 *4 (M.D. Fla. 2006) (holding that messages left on debtor''s answering machines were "communications" under the FDCPA); *Hosseinzadeh*, 387 F. Supp. 2d at 1115-16 (holding that a voice mail message is a "communication" under the FDCPA); *Savage v. NIC, Inc.*, No. CV 08-1780-PHX-JAT, 2009 WL 2259726 at *6 (D. Ariz. 2009).

101.     Defendants failed to identify Accretive and/or Medical Financial Solutions as a debt collector in the voice messages/voice recordings that it left, or caused to be left, for Plaintiff.

102.     Medical Financial Solutions maintains no Internet website and is not registered as a business entity with the Tennessee Department of State.  This means that the least sophisticated consumer has no way to independently discovery who Defendants are or what their business is, without contacting Defendants.

103. Defendants violated 15 U.S.C. § 1692e(11) by failing to disclose during communications with Plaintiff that the communications were from a debt collector.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a. Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

    b. Adjudging that Defendants violated 15 U.S.C. § 1692e(11).

    c. Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. § 1692k, in the amount of $1,000.00 per class member.

    d. Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

    e. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

    f. Awarding such other and further relief as the Court may deem just and proper.

### COUNT III: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(10)

104. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 103.

105. 15 U.S.C. § 1692e(10) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*     \*     \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

106.    The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "These provisions sweep with "extraordinar[y]" breadth, and call for "strict liability, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009) (*citing Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992); *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007); 15 U.S.C. § 1692k(a)).

107.    Defendants left, or caused to be left, for Plaintiff three voice messages/voice recordings stating: "This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you." *Supra* at Exhibits 1-3.

108.    Communicating that the voice messages/voice recordings were "time sensitive" was materially false, deceptive, and misleading.

109.    No entity is registered to do business in Tennessee under the name Medical Financial Solutions. (Exhibit 7, Tennessee Department of State; Business Name Availability Search Results for: "Medical Financial Solutions").

110.    No entity holds a license to collect debts in Tennessee under the name Medical Financial Solutions. (Exhibit 8, Tennessee Department of Commerce and Insurance; License Search and Verification for: "Medical Financial Solutions").

111.    Generally, material facts are ones which, if known, might influence a person's decision on a matter. *See generally* Black's Law Dictionary 998 (8th ed. 2004) (defining material as "[h]aving some logical connection with the consequential facts [or] [o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential[.]").

*See also e.g. Miller v. Javitch, Block and Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009) (discussing materiality).

112.    The least sophisticated consumer receiving a "time sensitive" voice message/voice recording which fails to disclose who it is from, or its purpose, is more likely to return the call than a consumer receiving a voice message/voice recording which states that it is from a debt collector, and/or one that conveys that the purpose of such message is to collect a debt and that any information obtained will be used for that purpose.

113.    A basic Internet search for information about Accretive may reveal that it is a debt-collector. The same is not true for Medical Financial Solutions, which is a under which no entity was authorized to do business or collect debts in Tennessee at anytime during the class period. (Exhibits 7 & 8).[4]

114.    Defendants' voice messages/voice recordings contain material misrepresentations and/or omissions and therefore they violate 15 U.S.C. § 1692e(10).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

     a.  Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

     b.  Adjudging that Defendants violated 15 U.S.C. § 1692e(10).

     c.  Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. § 1692k, in the amount of $1,000.00 per class member.

     d.  Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

---

[4] An entity named Medical Financial Solutions, Inc. (Control No. 292822), was registered to business in Tennessee from March 31, 1995, until it was administratively dissolved on September 17, 1999.

e. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

f. Awarding such other and further relief as the Court may deem just and proper.

## COUNT IV: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(10)

115. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 114.

116. 15 U.S.C. § 1692e(10) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *    *    *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

117. "It is a violation to send any communication that conveys to the consumer a false sense of urgency." *Leyse v. Corporate Collection Services, Inc.*, 2006 WL 2708451 (S.D. N.Y. 2006), (*citing* Federal Trade Commission Staff Commentary 53 Fed. Reg. 50097-02 (1988)); *see also Romine v. Diversitied Collection Servs.*, 155 F. 3d 1142, 1143 (9th Cir. 1998) (holding that a debt collector violates 15 U.S.C. § 1692e(10) by creating a false sense of urgency).

118. Communicating that Defendants' prerecorded messages were "time sensitive" was materially false and misleading, and further designed to create a false sense of urgency. *See supra* at Exhibits 1-3.

119. Defendants' voice message/voice recordings delivered to Plaintiff are not "time sensitive." Rather, they are standardized and prerecorded voice messages/voice recordings

which Defendants deliver to alleged debtors indiscriminately, uniformly, repeatedly, and without regard to the circumstances of the individual accounts to which they relate.

120.    The prerecorded and standardized voice message/voice recording that Defendants delivered, or caused to be delivered, to Plaintiff on three separate occasions (repeating the recording twice on each occasion), fails to convey any information about what the "time sensitive" voice message/voice recording concerns, or why it may be "time sensitive." *See supra* Exhibits 1-3.

121.    Voice messages/voice recordings like the voice messages/voice recordings employed by Defendants work because they are deceptive; and yet, consumers respond to them — which increases collections and profit, and so Defendants employ them purposefully as a matter of business pattern and practice.

122.    Defendants violated 15 U.S.C. § 1692e(10) by leaving Plaintiff a voice message/voice recording not only vague enough to provoke a recipient to return the calls in haste, but which would deceptively entice a consumer to communicate with a debt collector.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

g.    Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

h.    Adjudging that Defendants violated 15 U.S.C. § 1692e(10).

i.    Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. § 1692k, in the amount of $1,000.00 per class member.

j.    Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

k.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

l.  Awarding such other and further relief as the Court may deem just and proper.

### COUNT IV: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(14)

123.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 122.

124.  15 U.S.C. § 1692e(14) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *       *       *
>
> (10) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

15 U.S.C. § 1692e(14).

125.  "Section e(14) bars "[t]he use of any business, company or organization name other than the true name of the debt collector's business, company or organization." *Peter v. GC Services L.P.*, 310 F.3d 344, 352 (5th Cir. 2002); *see also Gradisher v. Check Enforcement Unit, Inc.,* 210 F. Supp. 2d 907, 914 (W.D. Mich. 2002) (*citing Hartman v. Meridian Fin. Servs., Inc.*, 191 F.Supp.2d 1031, 1045-46 (W.D. Wis. 2002).

126.  A collector's "true name" includes the collector's legal name (i.e., the registered corporate or LLC name with the state) as well as the name under which it is licensed to do business. *Boyko v. Am. Intern. Group, Inc.*, No. 08-2214 RBK/JS, 2009 WL 5194431 at *6 (D.N.J. Dec. 23, 2009) (*citing See Kizer v. Am. Credit & Collection*, No. B-90-78, 1990 WL 317475, at *6 (D. Conn. Dec.17, 1990).

127. Court's have considered and explained the purpose of Congress's use of the term "true name" in Section 1692e(14):

> The Court is not convinced that a collector is using its "true name" where it engages in collection activities under an unlicensed trade name or its commonly known name. Section 1962e(14) seems to suggest with the word "true" that only an official name will suffice. Congress could have used a broader term such as "own" name, see 15 U.S.C. § 1692a(6) (defining "debt collector"), if it intended § 1692e(14) to be inclusive rather than exclusive of other names. Given however that the purpose of the provision is to prevent fraud and misleading representations, and given that Congress used an exacting term like "true name," the Court is convinced that § 1692e(14) requires debt collectors to use a precise, official name when conducting debt collection activities.

*Boyko*, 2009 WL 5194431 at *6 (D.N.J. Dec. 23, 2009)

128. As a foreign for-profit corporation, Accretive could not transact business in Tennessee until it obtained a certificate of authority from the secretary of state. Tenn. Code Ann. § 48-25-101(a) (2002). On or about August 18, 2009, Accretive registered and obtained a certificate of authority to transact business in Tennessee under its true business name: Accretive Health, Inc. (Exhibit 4, Tennessee Department of State Business Entity Detail (Control No. 608326)).

129. Accretive has not elected to adopt an assumed corporate name in accordance with Tenn. Code Ann. §§ 48-25-101(b) and 48-25-106 (2002).[5]

130. As a debt collector, Accretive was required to register with and obtain a license to collect debts in Tennessee from the Tennessee Department of Commerce and Insurance. Tenn. Code Ann. § 62-20-105 (2002). Accretive registered as a debt collection agency and was issued

---

[5] "[T]he corporate name (including an assumed corporate name) of a foreign corporation must be distinguishable upon the records of the secretary of state from: (1) The corporate name or assumed corporate name of a corporation incorporated or authorized to transact business in this state; [and] (2) A corporate name or assumed corporate name reserved or registered under § 48-14-102 or § 48-14-103[.] Tenn. Code Ann. §§ 48-25-101(b)(1)-(2).

a license to collect debts in Tennessee under its true business name: Accretive Health, Inc. (Exhibit 5, License ID No. 1073).

131. Without any indication that Accretive, a registered and licensed collection agency, was actually the entity that was attempting to collect an alleged debt from Plaintiff, Defendants left, or caused to be left, for Plaintiff the following standardized and prerecorded voice message/voice recording:

> This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you. This is a time sensitive message from Medical Financial Solutions, please call us back at 866 249 2094. Thank you.

Exhibits 1-3 (redundancy in originals CD of voice recording).

132. This message is materially deceiving and false. It creates the impression in the mind of the least sophisticated consumer that an entity named Medical Financial Solutions has urgent business with such consumer. And yet, a search of the Tennessee Department of State's business registration records reveals that the only entity registered under such a name — Medical Financial Solutions, Inc. — was administratively dissolved in 1999. (Exhibit 6, Tennessee Department of State Business Entity Detail (Control No. 292822)). Defendants' message leaves the least sophisticated consumer totally in the dark and left to wonder who is contacting them and why.

133. Defendants' voice messages/voice recordings use the name Medical Financial Solutions to indicate that a third party is attempting to collect what Accretive, by such messages, attempts to collect. Devoid of any direct reference to Accretive, the voice messages/voice recordings otherwise fail to provide any information concerning or alluding to any affiliation or connection between Medical Financial Solutions and Accretive. The omission of the fact that Medical Financial Solutions *is* Accretive is materially misleading and deceptive.

27

134.     Because they left, or caused to be left, for Plaintiff a prerecorded and standardized voice message/voice recording using the name of any business, company, or organization name other than Accretive Health, Inc.'s true name, Defendants violated 15 U.S.C. § 1692e(14).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.   Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.   Adjudging that Defendants violated 15 U.S.C. § 1692e(10).

c.   Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. § 1692k, in the amount of $1,000.00 per class member.

d.   Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

e.   Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

f.   Awarding such other and further relief as the Court may deem just and proper.

### COUNT V: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692f

135.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 134.

136.     15 U.S.C. § 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C. § 1692f.

137.    Conduct enumerated by 15 U.S.C. § 1692f was not intended to limit the applicability of the general prohibition of "unfair or unconscionable" behavior. *McMillan v. Collection Professionals Inc.*, 455 F. 3d 754 (7th Cir. 2006).

138.    15 U.S.C. §1692f "serves a backstop function, catching those "unfair practices" which somehow manage to slip by §§ 1692d & 1692e." *Edwards v. McCormick*, 136 F. Supp. 2d 795 (S.D. Ohio 2001).

139.    15 U.S.C. § 1692f "allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996), (*citing Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461 n. 10 (C.D. Cal. 1991)).

140.    Although registered to do business and licensed to collect debts in Tennessee under its true business name, Accretive Health, Inc., Defendants communicated to Plaintiff, or caused to be communicated to Plaintiff, a prerecorded and standardized voice message/voice recording using a name which is indistinguishable from a Tennessee corporation which was administratively dissolved in 1999.

141.    This is unfair and unconscionable and contrary to Tennessee law which — for the purpose of avoiding the type of misdirection and confusion created by Defendants — requires a that the name and any assumed names assumed names of a foreign corporation doing business in Tennessee "must be distinguishable upon the records of the secretary of state from: (1) The corporate name or assumed corporate name of a corporation incorporated or authorized to transact business in this state." Tenn. Code Ann. §§ 48-25-101(b)(1) (2002).

142.    Defendants violated 15 U.S.C. § 1692f by leaving, or causing to be left, for Plaintiff a prerecorded and standardized voice message/voice recording using a name other than

Accretive Health, Inc's true name, and one which is indistinguishable from a Tennessee corporation dissolved in 1999.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

g. Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

h. Adjudging that Defendants violated 15 U.S.C. § 1692f.

i. Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. § 1692k, in the amount of $1,000.00 per class member.

j. Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

k. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

l. Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

143. Plaintiff is entitled to and hereby demands a trial by jury on all counts.

Dated: April 26 , 20 11

Respectfully submitted,

By: _____
Paul K. Guibao
Attorney for Plaintiff
Weisberg & Meyers, LLC
1448 Madison Avenue
Memphis, TN 38104
Telephone: (602) 445 9819
Facsimile: (866) 565 1327
Email: PGuibao@AttorneysForConsumers.com

30

*Please send correspondence to the address below*

Paul K. Guibao
Weisberg & Meyers, LLC
Attorneys for Plaintiff
5025 N. Central Ave. #602
Phoenix, AZ 85012